1129

Wallace B. DALTON and Shirley B. Dalton, Appellants v.
SOUTH CAROLINA TAX COMMISSION, Respondent.

(367 S. E. (2d) 459)

Court of Appeals

*John C. von Lehe, Jr.* and *Stephen P. Groves* of *Young, Clement, Rivers & Tisdale*, Charleston, *for appellants.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Joe L. Allen, Jr.* and *Deputy Atty. Gen. Ray N. Stevens*, Columbia, *for respondent.*

Heard Feb. 23, 1988.

Decided April 4, 1988.

SHAW, Judge:

Taxpayers, Wallace B. and Shirley B. Dalton, sued to recover taxes paid under protest. The trial judge ruled the South Carolina Tax Commission did not have to refund the tax. We affirm.

The issue presented in this appeal is whether interest paid on loans used to purchase real estate rental property out-of-state is deductible from state income.

Because Judge Moore's order eruditely sets forth and disposes of this issue, we adopt and publish his order, as modified and supplemented, as the view of this court. The modifications and supplements are reflected by either ellipses or bracketed material.

### ORDER OF JUDGE MOORE

### INTRODUCTION

This action pursuant to § 12-47-220, *South Carolina Code of Laws*, 1976, ... is a suit by the ... [taxpayers] to recover

income tax, penalties and interest of $48,744.24 paid under protest to the ... South Carolina Tax Commission (the Tax Commission). The matter was tried without a jury upon stipulated facts plus additional evidence established by witnesses' testimony and supporting exhibits.

The question [is] whether the taxpayers' claimed deduction of interest expenses totaling $525,094 for three years is allowable. The taxpayers assert the deduction is proper since they argue § 12-7-700(3) [*South Carolina Code of Laws*, 1976,] allows a deduction for interest paid during the tax years. Further, the taxpayers argue no other provision of law prohibits the deduction since they assert the interest expense results from a passive investment. The Tax Commission argues the interest expense is not deductible for several reasons. First, the Tax Commission asserts that where the income of an activity is not taxable in South Carolina because that activity is conducted entirely outside of South Carolina, any expenses incurred to produce that non-taxable income are likewise not deductible. This is the matching principle. Second, the Tax Commission asserts § 12-7-1120(3) [*South Carolina Code of Laws*, 1976, as amended] denies the claimed deduction by allocating the interest expense away from South Carolina and to the state where the property producing the rental income is located. Finally, the Tax Commission argues it has determined under § 12-7-1200 [*South Carolina Code of Laws*, 1976] that separate accounting most accurately reflected the taxpayers' South Carolina income and that separate accounting prohibits the interest deduction claimed by the taxpayers.

This Court concludes the interest expense is not deductible due to the matching principle as well as § 12-7-1120(3) and § 12-7-1200. This conclusion is supported by the established case law as well as the facts of this dispute.

## FACTS

The taxpayers filed their South Carolina income tax returns for 1981, 1982, and 1983 and claimed the following deductions for interest expenses:

| 1981 | 1982 | 1983 | Total |
|------|------|------|-------|
| 2,196 | 209,567 | 313,331 | 525,094 |

These interest expense deductions are from three sources. The first source is funds borrowed by the taxpayers from five limited partnership ventures. These funds were used to purchase an interest in each of the five partnerships as a limited partner. The second source is funds borrowed by the five partnerships and used to purchase or construct out-of-state commercial rental properties. These rental properties were owned and leased by the partnerships to commercial tenants. With respect to these transactions, the partnerships retained agents who secured the financing and performed construction activities. The partnerships neither performed nor supervised construction or financing activities. The liabilities incurred by the partnerships were secured exclusively by the property acquired and resulted in no other liability to the partnerships. The interest expenses were passed through to the taxpayers based upon the taxpayers' ownership share of the partnership. The third source is funds borrowed by the taxpayers from commercial banks and used to purchase out-of-state condominium rental properties. The following table identifies the amount of interest expense in each of these three classifications:

|  | 1981 | 1982 | 1983 | Total |
|---|---|---|---|---|
| 1. Borrowing from the partnerships | 0 | 33,513 | 60,112 | 93,625 |
| 2. Borrowing by the partnerships | 2,196 | 159,534 | 241,579 | 403,309 |
| 3. Borrowing unrelated to the partnerships | 0 | 16,520 | 11,640 | 28,160 |
| Total | 2,196 | 209,567 | 313,331 | 525,094 |

The "borrowing from the partnership" category generated a claimed deduction for interest of $93,625. This resulted from loans to the taxpayers from five different partnerships. These interest payments are set out as follows:

|  | 1981 | 1982 | 1983 | Total |
|---|---|---|---|---|
| Suteret Assoc. | 0 | 9,426 | 9,582 | 19,008 |
| Trefar Assoc. | 0 | 9,124 | 20,867 | 29,991 |
| McGuire Group | 0 | 2,800 | 9,929 | 12,729 |
| Jayal Assoc. | 0 | 5,016 | 6,357 | 11,373 |

| Elway Assoc. | 0 | 7,147 | 13,377 | 20,524 |
|---|---|---|---|---|
| Total | 0 | 33,513 | 60,112 | 93,625 |

The taxpayers, upon the purchase of an interest in a limited partnership, chose to finance most of the purchase price. The taxpayers executed notes in payment of a portion of their interests and such payments on these notes included the interest charges as identified above.

The partnerships of Suteret, Trefar, Jayal and Elway incurred interest expenses. Each partnership owned only out-of-state improved real estate which it leased to various out-of-state tenants such as Safeway, Kinney Shoe Corp., Xerox and Supermarkets General Corporation. These leases were what are commonly called triple net leases. Under these leases, the tenant was essentially liable for all leasehold expenses. In acquiring, constructing and improving the out-of-state properties, each partnership borrowed funds or assumed outstanding liabilities. Payment on these loans resulted in interest expenses which were passed through to the partners.

The interest expense which passed through the partnerships to the taxpayers, based upon their percentage share of ownership in each partnership, is as follows:

| | 1981 | 1982 | 1983 | Total |
|---|---|---|---|---|
| Suteret | 1,123 | 39,560 | 42,958 | 83,641 |
| Trefar | 1,073 | 54,079 | 83,292 | 138,444 |
| Jayal | 0 | 34,385 | 47,253 | 81,638 |
| Elway | 0 | 31,510 | 68,076 | 89,586 |
| Total | 2,196 | 159,534 | 241,579 | 403,309 |

The above amounts constitute the "borrowing by the partnerships" category.

This final category of interest expense in dispute is that of $28,160 of interest. This is the "borrowing unrelated to the partnerships" category. The taxpayers purchased three condominiums located in Charlotte, North Carolina. During 1982 and 1983, the taxpayers incurred $16,520 and $11,640, respectively, in interest expense paid to Republic Bank and Trust on funds borrowed to purchase the three condomini-

ums. These properties are rental properties acquired or placed in service on December 21, 1981.

## CONCLUSIONS OF LAW

The Court's conclusion that the interest expense is not deductible is established by three separate approaches: the matching principle for out-of-state income, the allocations provisions of § 12-7-1120(3) and the separate accounting method of § 12-7-1200. Each is addressed in this Order.

### 1. *The Matching Principle*

The principle of matching income not taxable in South Carolina since it was generated wholly outside South Carolina with the expenses that generated that non-taxable income is firmly established as the law in South Carolina. Since 1966 five cases have specifically applied the matching of income with expenses and established such as the applicable law in South Carolina.

In *Colonial Life and Acc. Ins. Co. v. South Carolina Tax Commission,* 248 S. C. 334, 149 S. E. (2d) 777 (1966), an insurance company was subject to a license fee based upon its income from policyholders within South Carolina but not on income from policyholders outside South Carolina. The company sought to deduct ad valorem taxes paid on its building and furnishings located in South Carolina. Likewise, it sought to deduct employment taxes paid on the personnel working in its home office in South Carolina. The Court held only the portion of the taxes attributable to South Carolina's taxable income was deductible since to allow a deduction for all the taxes would grant a deduction for "the production of the tax free out-of-state income." *Colonial Life,* supra, 149 S. E. (2d) at p. 780.

In 1977 the Court again stated its adherence to the matching principle. In *Seward v. South Carolina Tax Commission,* 269 S. C. 52, 236 S. E. (2d) 198 (1977), a taxpayer who owned cattle outside South Carolina attempted to deduct the expenses associated with caring for the cattle. The Court disallowed all of the expenses and held ". . . the gains from the sale of the cattle are not taxable under the South Carolina statutes and, therefore, the expenditures in connection with these gains are not deductible here. *Colonial Life and Acc. Insurance Co.,* 248 S. C. 334, 149 S. E. (2d) 777, is a South

Carolina case upholding the same principle." *Seward*, supra 236 S. E. (2d) at pp. 201-202.

In 1982 the Court in *M. Lowenstein & Sons, Inc. v. South Carolina Tax Commission*, 277 S. C. 561, 290 S. E. (2d) 812 (1982) disallowed a deduction associated with interest income. The Court found the income would not be taxable in South Carolina and in reaching its conclusion to disallow the claimed deduction, the Court applied the matching principle.

"Because such income was not taxable by South Carolina the loss therefrom cannot be used to reduce the plaintiff's taxable income from other activities within the State." *M. Lowenstein*, supra, 290 S. E. (2d) at p. 816.

In 1983 the Court applied the matching principle to a case which is virtually identical to the instant case. In *Ellis v. South Carolina Tax Com'n*, 280 S. C. 65, 309 S. E. (2d) 761 (1983), the taxpayers were limited partners in partnerships involved in oil and gas drilling and exploration and real estate ventures. The Court recognized that the taxpayers had made an "investment" but gave no significance to such term in disallowing the taxpayers' share of the partnerships' expenses. Since the partnerships had expenses in excess of their income, the net result was a loss with the taxpayer claiming a deduction for his pro rata share of the loss. The Court found that the loss deduction of the partnership was treated as if it were incurred by the partners directly from the source with the source being out-of-state income not taxable in South Carolina. Since the income was not taxable here, no deduction associated with that income was deductible in South Carolina. The Court held the following:

"Since the losses ... were incurred by the taxpayer from out-of-state partnership interests, these losses retained the character of out-of-state losses when distributed to the taxpayer by reason of the 'pass through' provision of § 12-7-300. We think Seaward is controlling ..." *Ellis*, supra, 309 S. E. (2d) at p. 763.

In the instant case, the $403,309 deduction resulting from the borrowing by the partnership was from non-taxable out-of-state rental income. The $93,625 deduction resulting from

the borrowing from the partnerships arose from funds borrowed to obtain an interest in the out-of-state rental partnerships. Finally, the $28,160 deduction resulting from purchasing three rental condominiums arose from non-taxable out-of-state rental income. Because the rental income is not taxable here, none of the interest deductions are allowable here.

The 1985 case of *Pendarvis v. South Carolina Tax Com'n.*, 285 S. C. 381, 329 S. E. (2d) 766 (1985), also supports the matching principle. In *Pendarvis*, the Court found that the taxpayer purchased a copyright as an investment. That is, he intended to sell the copyright for a gain. The Court then held that copyrights were capital assets subject to a depreciation deduction under § 12-7-700(8) as being property held for investment. Finally, the Court held that the deduction was properly allowed in South Carolina since "the principles of allocation and apportionment dictate that the entire amount be deducted in South Carolina." *Pendarvis*, supra, 329 S. E. (2d) at p. 767. This quoted language alludes to the matching principle the Court had been applying since 1966 beginning with *Colonial Life*, supra. The matching principle would allow the deduction since the Court had found the copyright to be an intangible. The sale of an intangible is taxable in South Carolina since the intangible is deemed to be located at the taxpayer's residence, i.e., South Carolina. The sale of property located in South Carolina is subject to South Carolina's income tax. Since the sale of the property was taxable in this State, the matching principle required that the deduction incurred while holding such asset for sale should also be deductible.

In the instant case, the taxpayers have produced no evidence that they were holding the limited partnership interests for the purpose of achieving a gain on the sale of such interests. The evidence establishes that all interest expenses were incurred to produce rental income. The production of the rental income by the partnerships is treated as though it was derived by the taxpayer directly. See *Ellis*, supra. The out-of-state rental income, whether earned through the partnerships or by renting condominiums, is non-taxable in South Carolina. Likewise, the interest expense from funds borrowed to acquire the part-

nership shares and from funds borrowed by the partnerships to acquire or construct out-of-state rental properties is nondeductible.

### 2. *Section 12-7-1120(3)*

The taxpayers essentially assert that since ▪ § 12-7-700(3) allows an interest deduction, such deduction is allowable in all events. This view ignores § 12-7-1120(3).

Section § (sic) 12-7-1120(3) states the following in part:

> "The following items of income shall be specifically and directly allocated: (3) Rents received from the lease or rental of real estate ... where the property leased was not used in or was not connected with the trade or business of the taxpayer ... less all related expenses, shall be allocated to the state in which the property was located at the time the income was derived."

This section allocates the rental income from the out-of-state rental partnerships and the Charlotte rental condominiums to the out-of-state locations. This section further allocates to these out-of-state locations "all related expenses." Related expenses have been defined by Regulation 117-73 to mean "... costs incurred in the acquisition, sale or exchange of real, tangible or intangible property." Further, related expenses were found in *Avco Corporation v. Wasson,* 267 S. C. 581, 230 S. E. (2d) 614, 615-616 (1976), to include interest expenses incurred from funds borrowed and used to acquire stock.

All of the interest expenses in dispute are related expenses to the production of out-of-state rental income. The $93,625 was a cost incurred to acquire a partnership interest used to produce the out-of-state rental income. The $403,309 was a cost incurred to acquire out-of-state real property used by the partnerships to produce rental income. Finally, the $23,160 was cost incurred to acquire the out-of-state condominiums used to produce rental income. Each category of interest expense is related to the rental income and thus none of the $525,094 interest expense is deductible in South Carolina.

Section 12-7-1120(3) requires that the rental property not be used in or connected with the taxpayers' trade or business

before the income and related expenses are allocated to the situs of the property. The taxpayers have asserted to this Court that none of the properties are in or connected with a business. Rather, the taxpayers assert all properties are purely passive investments. Such a view does not sustain the taxpayers' deductions but rather supports the Tax Commission's disallowance since these non-business expenses are allocated away from South Carolina by § 12-7-1120(3).

Regulation 117-74 is directly on point and specifically supports the denial of the interest deductions. That Regulation, in effect since 1975 and consistently applied since then, provides in part as follows:

> "Income or loss realized by resident individuals or partnerships ... from the lease or rental of tangible personal property or real property, the situs of which is in another state, shall be allocated to the state in which the property is located."

Here the loss from the partnerships result[s] from the rental of real property having a situs in another state. The same is true for the rental condominiums located in North Carolina. Since all of the interest expenses were incurred in producing the out-of-state rental income, the interest expenses are not deductible. This Regulation has been consistently applied since 1975 and should not be overturned without cogent reasons. It is well established that:

> " .. the construction of a statute by agency charged with its administration is entitled to the most respectful consideration and should not be overruled absent compelling reasons [cites omitted]." *Emerson Electric Co. v. Wasson*, 287 S. C. 394, 339 S. E. (2d) 118, 120 (1986).

### 3. *Section 12-7-1200*

Section 12-7-1200 also disallows the interest expense in dispute. That section authorizes the Commission to require a taxpayer to report his income on a separate accounting basis, i.e., report his South Carolina income and reduce such by his South Carolina expenses. The section states in part the following:

> When the Commission finds the books of account and records sufficiently clear, in its opinion, to show

the true net income arising from sources within this State it may require and (sic) return to be filed upon such basis and calculate the tax due upon the net income so determined."

The Tax Commission's Finding (sic) of February 7, 1986, specifically determined that the "net income arising from sources within the State" could be determined. It found that all income and expenses of the partnership rental properties and of the condominiums rental properties were all out-of-state. The Commission further found that the separate accounting of rental income was required for reporting the taxpayers' rental income and expenses. The decision to require separate accounting properly matches South Carolina income with South Carolina expenses and properly denies a deduction for out-of-state expenses used to produce out-of-state nontaxable rental income.

Based upon the above, this Court holds the interest deductions in dispute of $525,094 are not deductible and the taxpayers may not recover from the Tax Commission the payment of $48,744.24 for income taxes, penalties and interest.

Affirmed.

SANDERS, C. J., and CURETON, J., concur.