731 S.E.2d 869

ALLTEL COMMUNICATIONS, INC., Petitioner,

v.

SOUTH CAROLINA DEPARTMENT
OF REVENUE, Respondent.

Alltel Mobile Communications of the Carolinas, Inc., Petitioner,

v.

South Carolina Department of Revenue, Respondent.

New York Newco Subsidiary, Petitioner,

v.

South Carolina Department of Revenue, Respondent.

Telespectrum, Inc., Petitioner,

v.

South Carolina Department of Revenue, Respondent.

360 Communications Co. of SC No. 1, Petitioner,

v.

South Carolina Department of Revenue, Respondent.

360 Communications Co. of SC No. 2, Petitioner,

v.

South Carolina Department of Revenue, Respondent.

No. 27156.

Supreme Court of South Carolina.

Heard June 7, 2012.

Decided Aug. 8, 2012.

John Marion S. Hoefer and Tracey Colton Green, both of Willoughby & Hoefer, of Columbia, for Petitioners.

Harry A. Hancock of Columbia, for Respondent South Carolina Department of Revenue.

Justice KITTREDGE.

We granted a writ of certiorari to review the court of appeals' unpublished opinion in this matter. *Alltel Commc'ns, Inc. v. S.C. Dep't of Revenue*, Op. No.2010–UP–232 (S.C. Ct.App. filed April 7, 2010). This case presents the legal question of whether the Alltel Entities (collectively Petitioners), which are cellular service providers, are included in the definition of "telephone company" for the purpose of increased license fees in S.C.Code Ann. section 12–20–100 (2000). Pursuant to cross motions for summary judgment, the Administrative Law Court (ALC) granted summary judgment in favor of Petitioners, finding that they were not telephone companies for purposes of section 12–20–100. Alternatively, the ALC found that if the statute were ambiguous, Petitioners would prevail under the rule that an ambiguity in a taxing statute must be construed in favor of the taxpayer.

Although the court of appeals recognized that the application of section 12–20–100 to Petitioners is not "absolutely

clear," it reversed the grant of summary judgment and remanded the matter to the ALC for additional fact finding. We reverse the court of appeals and reinstate the ALC's grant of summary judgment in favor of Petitioners. The term "telephone company" is not a defined term and its application to Petitioners is doubtful, as the court of appeals conceded. The presence of an ambiguity in a tax assessment statute requires that a court resolve that doubt in favor of the taxpayer. Accordingly, we resolve the case in line with the ALC's alternative holding.

## I.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; see also ALC Rule 68 (stating the South Carolina Rules of Civil Procedure may be applied in proceedings before the ALC to resolve questions not addressed by the ALC rules). The question of statutory interpretation is one of law for the court to decide. CFRE, LLC v. Greenville Cnty. Assessor, 395 S.C. 67, 73, 716 S.E.2d 877, 881 (2011). A reviewing court may reverse the decision of the ALC where it is in violation of a statutory provision or it is affected by an error of law. See S.C.Code Ann. § 1–23–610(B)(a), (d) (Supp. 2011).

## II.

Petitioners are engaged in the business of providing wireless communication services, or "cell phone" services, via radio waves within South Carolina. Petitioners timely filed corporate income tax returns with the Department of Revenue (DOR) with the required license fee reports for the years ending December 31, 1999 through December 31, 2003. Petitioners calculated their annual corporate license fee for the years at issue in accordance with the license fee generally applicable to corporations. See S.C.Code Ann. § 12–20–50 (requiring every corporation, except those that qualify as utilities and electric cooperatives, to pay a general annual

license fee as determined by the records of the corporation). In 2004, DOR conducted an audit and assessed a total deficiency of $4,709,671 against Petitioners, consisting of underpaid corporate license fees, understatement penalties, and interest. The basis for the deficiency was DOR's determination that Petitioners had erroneously used section 12–20–50 to calculate their license fees. DOR asserted each Petitioner was a "telephone company" and therefore required to pay heightened license fees imposed on utilities and electric cooperatives in accordance with section 12–20–100. Specifically, section 12–20–100(A) provides:

> In the place of the license fee imposed by Section 12–20–50, every express company, street railway company, navigation company, waterworks company, power company, electric cooperative, light company, gas company, telegraph company, and *telephone company* shall file an annual report with the department and pay a [heightened] license fee. . . .[1]

S.C.Code Ann. § 12–20–100(A) (emphasis added).

Each Petitioner filed a protest of the proposed deficiency pursuant to S.C.Code Ann. Section 12–60–450 (2000). DOR subsequently issued its determination denying all protests. Thereafter, Petitioners filed requests for a contested case hearing with the ALC, seeking to challenge DOR's deficiency assessment. Because the challenge presented a single question of statutory construction, the cases were consolidated, and the matter was submitted to the ALC on stipulations and cross motions for summary judgment. In relevant part, the parties stipulated that:

> (44) Petitioners are each a "radio common carrier" because each is a corporation "owning or operating in this State equipment or facilities for the transmission of intelligence

---

1. The heightened license fees are as follows:

    (1) one dollar for each thousand dollars, or fraction of a thousand dollars, of fair market value of property owned and used within this State in the conduct of business as determined by the department for property tax purposes for the preceding taxable year; and

    (2)(a) three dollars for each thousand dollars, or fraction of a thousand dollars, of gross receipts derived from services rendered from regulated business within this State during the preceding taxable year. . . .

    S.C.Code Ann. § 12–20–100(A).

by modulated radio frequency signal, for compensation to the public";

*(50) "Telephones and telephone companies transmit intelligence over a vast network of wires located in public rights of way and in easements over private property";*

(51) Petitioners "do not have facilities located in public rights of way"; and

(52) Petitioners provide "wireless voice and data communications services [using] radio communication towers or facilities owned or leased by [Petitioners] or licensed to [Petitioners]."

(emphasis added).

The ALC granted Petitioners' motion for summary judgment. The ALC found Petitioners were not required to pay the heightened license fees imposed by section 12–20–100 because they were not "telephone compan[ies]" under the plain language of the statute and the parties agreed upon the definition of "telephone company" found in Stipulation 50. Additionally, the ALC noted that while landline telephone companies have been given the power of eminent domain and the authority to install wires and facilities in public rights-of-way, wireless service providers have not been given these same privileges.

The ALC alternatively ruled that even if the term "telephone company" were ambiguous, Petitioners must prevail. Here, the ALC referenced the settled principle that any substantial doubt in the application of a tax statute must be resolved in favor of the taxpayer. *See Cooper River Bridge, Inc. v. S.C. Tax Comm'n,* 182 S.C. 72, 76, 188 S.E. 508, 509–510 (1936) ("[W]here the language relied upon to bring a particular person within a tax law is ambiguous or is reasonably susceptible of an interpretation that will exclude such person, then the person will be excluded, any substantial doubt being resolved in his favor.").

As noted, in an unpublished opinion, the court of appeals reversed and remanded the ALC's order, holding summary judgment was improper because the application of section 12–20–100 to Petitioners was not "absolutely clear as a matter of law." The court found the ALC erroneously relied on Stipulation 50's definition of the term "telephone company" in its

determination that Petitioners were not a telephone company under the plain language of the statute. The court correctly noted that determining the meaning of section 12–20–100 was an issue of law to be decided by the court, rather than the parties, and that courts are not bound by parties' stipulations of law. *See Greenville Cnty. Fair Ass'n v. Christenberry*, 198 S.C. 338, 17 S.E.2d 857 (1941); *cf. Media Gen. Commc'ns, Inc. v. S.C. Dep't of Revenue*, 388 S.C. 138, 151–52, 694 S.E.2d 525, 531–32 (2010) (accepting and relying on parties *factual* stipulations regarding the taxable income formulas at issue).

The court of appeals, however, did not attempt to define the term "telephone company." Instead, it remanded the case for additional development of the facts, finding more information was needed regarding the nature of Petitioners' services in order to determine whether they were "telephone compan[ies]" for purposes of section 12–20–100.[2]

## III.

The parties agree that Petitioners use radio waves, not landlines, to transmit communications. According to Petitioners, the plain meaning of the term "telephone company," in conjunction with the stipulations entered into by the parties, demonstrates that "telephone company" means a company that employs landlines and wires to transmit telephonic communications. Thus, Petitioners argue they are not subject to the heightened license fee of section 12–20–100 under the plain meaning rule.[3] "The usual rules of statutory construction

---

2. In our opinion, a remand to the ALC for further factual development would be futile in light of the 63 joint stipulations filed by the parties, including the stipulations regarding Petitioners' business and the technologies Petitioners use to provide wireless communication services. In this case, the summary judgment inquiry was purely one of law. *See CFRE, LLC*, 395 S.C. at 73, 716 S.E.2d at 881 (noting questions of statutory interpretation are questions of law for the court to decide). Moreover, the parties filed cross motions for summary judgment, thereby indicating the parties' belief that further development of the facts was unnecessary. *See Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir.1981) ("[C]ross motions for summary judgments do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.").

3. Petitioners' position, adopted by the ALC, has ostensible merit. The predecessor to section 12–20–100 was enacted in 1904, yet more than a

apply to the interpretation of tax statutes." *Multi–Cinema, Ltd. v. S.C. Tax Comm'n,* 292 S.C. 411, 413, 357 S.E.2d 6, 7 (1987). "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Media Gen.,* 388 S.C. at 147, 694 S.E.2d at 529 (quoting *Charleston Cnty. Sch. Dist. v. State Budget & Control Bd.,* 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993)) (internal quotations omitted). "Under the plain meaning rule, it is not the province of the court to change the meaning of a clear and unambiguous statute." *S.C. Energy Users Comm. v. S.C. Pub. Serv. Comm'n,* 388 S.C. 486, 491, 697 S.E.2d 587, 590 (2010). "Where the statute's language is plain, unambiguous, and conveys a clear, definite meaning, the rules of statutory interpretation are not

---

century later the term "telephone company" remains undefined by the legislature. As this Court has explained, "The tax imposed by [section 12–20–100's predecessor], therein called a 'license fee,' is manifestly an excise tax, laid under the benefit theory of taxation upon the public service corporations named for the privilege of exercising their corporate franchises and carrying on their business within the state." *Columbia Ry., Gas & Elec. Co. v. Carter,* 127 S.C. 473, 121 S.E. 377 (1924). With regard to telephone companies, the earliest laws were "designed to accommodate the original technology, which required the use of land rights-of-way to place telephone poles and run telephone lines." William J. Quirk & Fred A. Walters, *A Constitutional and Statutory History of the Telephone Business in South Carolina,* 51 S.C. L.Rev. 290, 293 (2000). States granted franchises over public and private lands to construct and operate telephone businesses and "local governments could not exclude a telephone company, but they could enforce normal police power regulation over the industry." *Id.* We note that telephone companies have historically been regulated by a state agency, now the Public Service Commission, and have been given the power of eminent domain. *See* S.C.Code Ann. §§ 58–9–2020 to –2030 (2011); *see also Quirk, supra,* at 377 ("The special taxes, at times, were justified as a return for the special rights and privileges the state and localities had granted, such as the power of eminent domain and the right to use the public rights-of-way."). Petitioners have none of the trappings of a public utility that further the purpose of the heightened license fee. Petitioners are involved in the cellular services market, which is a highly competitive arena rather than a monopoly. Moreover, Petitioners, unlike a landline telephone company, do not have the power of eminent domain nor do they make use of public property or rights-of-way; rather, Petitioners own or lease private property to transmit their wireless intelligence. Thus, while it is arguable that the heightened license fee does not translate to wireless communication service companies that are not granted special privileges by the State, the absence of a statutory definition for "telephone company" leaves the matter in doubt.

needed and the court has no right to impose another meaning." *Id.* Like the court of appeals, we do not construe section 12–20–100 to have the plain meaning attributed to it by the ALC.

■ Petitioners next seize on the ALC's alternative finding that the term "telephone company" is ambiguous. Petitioners point to the court of appeals' acknowledgement that application of section 12–20–100 to Petitioners was not "absolutely clear as a matter of law." In this regard, Petitioners contend the court of appeals erred in failing to construe any ambiguity in the tax statute against DOR. It necessarily follows, according to Petitioners, that such ambiguity must be construed in the taxpayers' favor. We agree.

■ Generally, a court must apply the rules of statutory interpretation to resolve the ambiguity and discover the intent of the legislature. *Kennedy v. S.C. Ret. Sys.*, 345 S.C. 339, 348, 549 S.E.2d 243, 247 (2001). However, "[i]n the enforcement of tax statutes, the taxpayer should receive the benefit in cases of doubt." *S.C. Nat'l Bank v. S.C. Tax Comm'n*, 297 S.C. 279, 281, 376 S.E.2d 512, 513 (1989) (citing *Cooper River Bridge, Inc. v. S.C. Tax Comm'n*, 182 S.C. 72, 188 S.E. 508 (1936)). "[W]here the language relied upon to bring a particular person within a tax law is ambiguous or is reasonably susceptible of an interpretation that will exclude such person, then the person will be excluded, any substantial doubt being resolved in his favor." *Cooper River Bridge, Inc.*, 182 S.C. at 76, 188 S.E. at 509–510; *see also SCANA Corp. v. S.C. Dep't of Revenue*, 384 S.C. 388, 394 n. 3, 683 S.E.2d 468, 471 (2009) (Beatty, J., dissenting) (noting general rule that where substantial doubt exists as to the construction of tax statutes, the doubt must be resolved against the government). The existence of an ambiguity in section 12–20–100 raises substantial doubt regarding the section's application to Petitioners. This doubt must be resolved in favor of Petitioners.

Therefore, we reverse the court of appeals and reinstate the grant of summary judgment in favor of Petitioners.

**REVERSED.**

PLEICONES, BEATTY, HEARN, JJ., and Acting Justice E.C. BURNETT, III, concur.